## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **ROSA B. ALUMBAUGH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 14-1008-JWL** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (SSD) and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

## I.    Background

Plaintiff applied for SSD and SSI, alleging disability beginning January 11, 2010. (R. 22, 125-26).  She exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits.  Plaintiff claims the Administrative

Law Judge (ALJ) erred in evaluating the medical opinion of Dr. White-Blakesley, made a credibility determination which is unsupported by record evidence, and provided a step five determination which is also unsupported by the evidence.

The court's review is guided by the Act.  <u>Wall v. Astrue</u>, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  <u>Lax v. Astrue</u>, 489 F.3d 1080, 1084 (10th Cir. 2007); <u>accord,</u> <u>White v. Barnhart</u>, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>see also</u>, <u>Wall</u>, 561 F.3d at 1052; <u>Gossett v. Bowen</u>, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting <u>Casias v. Sec'y of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991)); <u>accord</u>, <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court finds no error in the decision. It will address each alleged error in the order presented in Plaintiff's Brief.

## II.      The Medical Opinion of Dr. White-Blakesley

Plaintiff argues that the rationale relied upon by the ALJ in discounting Dr. White-Blakesley's opinion is inadequate, is based upon contradictory analysis, and is not grounded in fact. Plaintiff recognizes that the ALJ discounted Dr. White-Blakesley's opinion because it was "completed after only one visit, with no ongoing treatment relationship, and [with] no explanation of the evidence upon which she relied in rendering her opinion." (Pl. Br. 12) (quoting R. 31-32). But, she argues that these bases are "patently inadequate" for three reasons. First, because the ALJ accorded significant weight to the medical opinion of Dr. Mintz, another psychologist who had only examined Plaintiff once, and significant weight to the medical opinions of several other physicians and psychologists who had not examined Plaintiff at all. Second, she argues that the Southeast Kansas Mental Health Center,[1] where Dr. White-Blakesley works, had treated Plaintiff for years before she was seen by Dr. White-Blakesley and that the ALJ failed to

---

[1]Plaintiff's Brief states, "a Southeast Kansas Medical Center." (Pl. Br. 12). To the extent she used capitalization when speaking generically, the court uses a proper name, or to the extent she erred, the court corrects the reference. (R. 368-433, 526-53).

4

consider that fact in weighing Dr. White-Blakesley's opinion (thereby implying that Dr. White-Blakesley had reviewed all of the prior treatment records and had based her opinions, at least in part, on that review).  Finally, she argues that despite the ALJ's contrary finding, Dr. White-Blakesley provided an explanation for her opinions.  The Commissioner argues that the ALJ reasonably discounted the medical opinion of Dr. White-Blakesley.  She explains how, in her view the record evidence supports that determination.  And, she argues that the alleged "explanation" given by Dr. White-Blakesley for her findings is nothing more than a rehash of Plaintiff's symptoms.  She argues that Plaintiff's argument merely asks the court to reweigh the evidence.

The court finds no error in the ALJ's evaluation of Dr. White-Blakesley's opinion. Unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. 20 C.F.R. §§ 404.1527(c), 416.927(c) (effective March 26, 2012); Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2014).  Those factors are:  (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); see

also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v.

Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the

weight he gives the opinions.  Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003).

 "Finally, if the ALJ rejects the opinion completely, he must then give 'specific,

legitimate reasons' for doing so."  Id.  (citing Miller v. Chater, 99 F.3d 972, 976 (10th

Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

As Plaintiff points out, the ALJ accorded Dr. White-Blakesley's opinion "little

weight" because it was "completed after only one visit, with no ongoing treatment

relationship, and [with] no explanation of the evidence upon which she relied in rendering

her opinion."  (Pl. Br. 12) (quoting R. 31-32).  Despite Plaintiff's contrary assertions,

each of these is a valid reason to discount the opinion.

Plaintiff admits that Dr. White-Blakesley saw Plaintiff only once, but argues that it

is contradictory for the ALJ to accord her opinion "little weight" when she accorded

"significant weight" to the opinion of Dr. Mintz, who also saw Plaintiff only once, and to

the opinions of other physicians and psychologists who did not see her at all, but only

reviewed the record.  Plaintiff makes this argument in a vacuum.  Although this

individual factor is arguably the same for both Dr. Mintz, and Dr. White-Blakesley, and

tends to favor Dr. White-Blakesley over the non-examining doctors, the ALJ specified

differences in each case.  She noted that Dr. White-Blakesley provided no explanation of

the evidence upon which she relied (R. 31-32), and she noted that Dr. Mintz's opinion is

well-supported by his examination findings, and is consistent with the other medical evidence. Moreover, in according significant weight to the opinions of the non-examining state agency physician and psychologists, the ALJ noted that those opinions are also well-supported and consistent with the record evidence. (R. 31). The court does not find that a contradictory analysis has been used by the ALJ.

Plaintiff also admits that the record supports the ALJ's finding that there was no ongoing treatment relationship between Plaintiff and Dr. White-Blakesley. But, she argues that the Southeast Kansas Mental Health Center had treated Plaintiff for years and that the ALJ failed to consider that fact in weighing Dr. White-Blakesley's opinion, and thereby Plaintiff impliedly argues that Dr. White-Blakesley had reviewed all of the prior treatment records and had based her opinions, at least in part, on that review.

The record does not support Plaintiff's implied argument. Three times in her three-page Mental Capacity Assessment Dr. White-Blakesley specifically commented that her opinion was based on "[o]ne contact with client." (R. 555, 556, 557). In response to fourteen of twenty-three listed mental abilities, Dr. White-Blakesley replied that Plaintiff's capacity with regard to that mental ability is "unknown"). Id. And, in response to a question that asked whether Plaintiff could manage any benefits received in her own best interest, Dr. White-Blakesley responded, "Unknown due to minimal contact with client." (R. 557). There is no indication in Dr. White-Blakesley's assessment that she was aware of any of Plaintiff' previous treatment at the mental health center, and her

multiplied reiteration that she had only one contact with Plaintiff tends to indicate that her opinion was based on nothing more than a single vist with Plaintiff.

Plaintiff implies that Dr. White-Blakesley's candor should add to the weight accorded to the opinions she actually stated.  While that consideration might be a basis to accord greater weight to the opinion, the ALJ did not reject the opinion outright, she accorded it weight--"little weight."  Dr. White-Blakesley's candor might be the reason the ALJ did not reject the opinion entirely.  More importantly, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) (same).

Finally, Plaintiff argues that despite the ALJ's contrary finding, Dr. White-Blakesley did provide an explanation for her opinions, in that she stated that Plaintiff "presents with severe depression, including low motivation, excessive sleep, suicidal ideation, low energy, and withdrawal."  (Pl. Br. 13) (citing R. 556).  As the Commissioner points out, Dr. White-Blakesley's statement of the "medical/clinical findings that support" her assessment, is little more than a restatement of Plaintiff's reported symptoms.  That is no explanation of how Dr. White-Blakesley arrived at the conclusion that Plaintiff has "marked" limitations (defined as "[t]he individual cannot generally

8

perform satisfactorily in this area" (R. 555)) in five mental functional areas having to do with "Sustained Concentration & Persistence."  (R. 555-56).

The ALJ stated her bases for discounting Dr. White-Blakesley's medical opinion, those bases are supported by the record evidence, and Plaintiff has not shown otherwise. The ALJ did not err in the evaluation of this medical opinion.

## III.    The Credibility Determination

Plaintiff claims the ALJ's credibility determination is erroneous because she was "straining to discredit Plaintiff based upon improper reasoning" (Pl. Br. 14), and because, contrary to the ALJ's finding, "Plaintiff's mental health clearly was not stable after her decompensation."  Id. at 15 (citing R. 30).  The Commissioner argues that the ALJ reasonably assessed Plaintiff's credibility.  (Comm'r Br. 10-11).

The court's review of an ALJ's credibility determination is deferential, and it is generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule").  "However, '[f]indings as to credibility should

9

be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173.

Here, the ALJ determined that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms are not credible (R. 28), and provided five reasons that she discounted Plaintiff's allegations:  (1) The record does not support the degree of functional limitations alleged; (2) after her release from psychiatric hospitalization in July 2010, Plaintiff cancelled her therapy appointments, "stating 'she was planning to follow-up with her family doctor;" (3) the treatment records after release from the psychiatric hospitalization in July 2010 "indicate her medications and therapy are effective, and that her symptoms have been largely stable, with the exception of a few months in late 2011 and early 2012;" (4) Plaintiff acknowledged to Dr. Mintz that "she is able to perform all activities of daily living, including self-care, preparation of meals, cleaning, housework, and laundry;" (R. 30); and, (5) Plaintiff's financial interest in the outcome of the case counsels against accepting her allegations.  (R. 32).  Plaintiff attacks only the ALJ's reliance on reasons number two and number three.

With regard to reason two, Plaintiff acknowledges that she did cancel the appointments originally scheduled when she was hospitalized, but points out that she later returned for treatment and argues that, "[b]izarrely, the ALJ failed to acknowledge that Plaintiff" returned to Southeast Kansas Mental Health Center on July 20, 2010, "and continued treatment there on several occasions thereafter."  (Pl. Br. 15).  As Plaintiff

admits, the record reveals that Plaintiff cancelled her appointment with Southeast Kansas Mental Health Center on July 12, 2010, and called "to tell us that she was planning to follow up with her family doctor."  (R. 370).  Moreover, the record reveals that Plaintiff was treated by her family physician, Dr. Lee, on July 12, 2010, the day she cancelled her appointment with the mental health center, and that record says nothing whatsoever regarding Plaintiff's mental health concerns.  (R. 349).  It records only treatment for "some lower extremity swelling."  Id.  As the ALJ recognized, this is evidence tending to detract from the credibility of Plaintiff's allegations of disabling symptoms.  And, contrary to Plaintiff's argument, the ALJ acknowledged that Plaintiff subsequently "began receiving mental health treatment services from Southeast Kansas Mental Health Center" on July 20, 2010, and that her treatment continued thereafter.  (R. 30).

Plaintiff's argument with respect to reason number three is equally unavailing. She argues that contrary to the ALJ's finding in reason number three, her "mental health clearly was not stable after her" hospitalization, and in support of that argument she appeals to treatment notes from Dr. White-Blakesley on December 28, 2011 and from Nurse-Practitioner Garton on January, 9, 2012.  (Pl. Br. 15) (citing R. 534-35, 540). Plaintiff's argument ignores the actual finding by the ALJ in reason number three.  The court quotes the ALJ's discussion in this regard in its entirety:

> The claimant's subsequent treatment records indicate her medications and therapy are effective, and that her symptoms have been largely stable, with the exception of a few months in late 2011 and early 2012 (Exhibit 15F at 12-20 [(R. 496-504)]; Exhibit 21F at 4-6 [(R. 539-41)]).  The record shows that during that time the claimant experienced an especially stressful set of

11

circumstances in her life, including her husband asking her for a divorce; and the inability to afford prescribed medications (Exhibit 21F at 4 [(R. 539)]; 19F at 2 [(R. 524)]; 23F at 2-3 [(R. 559-60)]). A mental status examination performed on January 9, 2012, found the claimant's speech was normal, her eye contact was good, her thoughts were organized, her memory was intact, and she was calm and cooperative (Exhibit 21F at 5-6 [(R. 540-41)]).

(R. 30). Contrary to Plaintiff's argument, the ALJ specifically recognized that Plaintiff's condition was not stable for a "few months in late 2011 and early 2012" (R. 30), and she explained how she had accounted for that brief period of instability. Plaintiff has shown no error in the ALJ's findings with regard to reasons number two or number three. She has shown no error in the credibility determination.

## IV.    The Step Five Determination

Plaintiff claims that the ALJ's step five determination is erroneous because her hypothetical question to the vocational expert (VE) relied upon an erroneous evaluation of Dr. White-Blakesley's opinion, and upon an erroneous credibility determination. Because Plaintiff failed to show error in the evaluation of Dr. White-Blakesley's medical opinion or in the credibility determination, her step five argument must also fail.

A hypothetical presented to a vocational expert is sufficient if it includes all limitations found by the ALJ. Barnett v. Apfel, 231 F.3d 687, 690 (10th Cir. 2000). And, the VE's testimony in response to such a hypothetical may be relied upon by the ALJ. Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993). Plaintiff does not show error in the hypothetical presented to the VE.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 13th day of February 2015, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

13